Teague Westrope
Andrew Van Arsdale
AVA LAW GROUP, PLLC
2718 Montana Ave., Suite 220
Billings, MT 59101
(406) 333-3333
teague.westrope@avalaw.com
andrew.vanarsdale@avalaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| | |
|---|---|
| GLENN DEVOLDER, MICHAEL and JESSICA GUCIARDO, BILL and DEDRA BRADLEY and ELCC CO., MARK and DONNA ADAMS, PAULA ANGLEMYER, CARL and GENE´ BOLIN, WALTER and EFFIE BOLIEU, MATTHEW and MELBA BURRUSS, EUGENE CIERI, LEANDRO CIERI and AXIOS AUDACIA, LLC, MARK COLBY, ERNEST DUNN, DOUG and RENEE FISHER, BRENT and STACY GLOPEN, THOMAS HANDZLIK and DE PARADISE LLC, MARY LOU HERMES, CHERLYN JONES, MARION LUND, PAUL and KIMBERLY NECESSARY, MARK and HEIDI RICKNER, and LAURA SCHULTZE, individually and on behalf of others similarly situated,<br><br>Plaintiffs, | Case No. 9:23-cv-00124-DLC<br><br>**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

1

| | |
|---|---|
| vs.<br><br>MONTANA RAIL LINK, INC., and BNSF RAILWAY CO.,<br><br>Defendants. | |

COME NOW Plaintiffs, individually and on behalf of others similarly situated, and through counsel hereby allege as follows:

## I. INTRODUCTION

1. This is a negligence action brought by numerous property owners on behalf of themselves and others similarly situated who have suffered damage and destruction to real and personal property as the result of the River Road East Fire (the fire), which is believed to have been caused by railway activities undertaken by either or both Defendants. The value of the loss is estimated to be millions of dollars.

## II. PARTIES

2. Plaintiffs all own property in Sanders County, Montana.

3. Glenn DeVolder lives in Sanders County. He owns approximately 40 acres of forested land that was damaged or destroyed by the fire. He lost his home, several structures, personal property, timber, and other vegetation. Glenn tried to defend his property by constructing his own fire line, but as the fire neared his propane tank, he decided to retrieve his wife's ashes and flee for his life.

4. Michael and Jessica Guciardo live in Sanders County. They own approximately 160 acres of forested land that was damaged or destroyed by the fire. They lost their home, personal property, timber, and other vegetation. A neighbor notified them as the fire approached. The Guciardos barely escaped with their lives.

5. Bill and DeDra Bradley live in Sanders County. They own ELCC Corporation, a foreign profit corporation. ELCC was formed in Texas. Bill Bradley is its registered agent. ELCC owns approximately 285 acres of forested land that was damaged or destroyed by the fire, including dozens of hand-selected and cut logs which the Bradleys had drying out to be used for the construction of their dream retirement log home.

6. Mark and Donna Adams live in Sanders County. They own approximately 4.72 acres. The fire damaged or destroyed timber and other vegetation.

7. Paula Anglemyer lives in Sanders County. She owns approximately 80 acres of forested land that was damaged or destroyed by the fire. She lost her home, several structures, personal property, timber, and other vegetation. A neighbor notified her as the fire approached. She barely escaped with her life.

8. Carl and Gene´ Bolin live in Sanders County. They own approximately 160 acres of forested land. The fire damaged or destroyed timber and other vegetation.

9. Walter and Effie Bolieu live in Sanders County. They own approximately 120 acres of forested land that was damaged or destroyed by the fire. They lost their home, several structures, personal property, timber, and other vegetation.

10. Matthew and Melba Burruss live in Sanders County. They own approximately 120 acres of forested land. The fire damaged or destroyed timber and other vegetation.

11. Eugene Cieri lives in Connecticut. He owns approximately 40 acres of forested land that was damaged or destroyed by the fire. He lost several structures, personal property, timber, and other vegetation.

12. Leandro Cieri lives in Connecticut. He and his father Eugene are members of Axios Audacia, LLC, which owns approximately 80 acres of forested forested land. The fire damaged or destroyed timber and other vegetation.

13. Mark Colby lives in Missoula County. He owns approximately 40 acres of forested land that was damaged or destroyed by the fire. He lost a home, personal property, timber, and other vegetation.

14. Ernest Dunn lives in New Jersey. He owns approximately 80 acres of forested land. The fire damaged or destroyed timber and other vegetation.

15. Doug and Renee Fisher live in Sanders County. They own approximately 440 acres of forested land that was damaged or destroyed by the fire.

They bought the property a couple of years ago with the intent of building a home and retiring on it. They also intended to log timber on the property as a source of retirement income. In addition to the loss of timber and other vegetation, the Fishers had invested a considerable amount of time and money building access roads to the property. Further, they believe an old trapper's cabin was damaged or destroyed.

16. Brent and Stacy Glopen live in Sanders County. They own approximately 27.5 acres of forested land that was damaged or destroyed by the fire. They lost personal property, timber, and other vegetation.

17. Thomas Handzlik lives in Texas. He owns De Paradise LLC, a Montana limited liability company that recently purchased approximately 340 acres of forested land in Sanders County. Thomas purchased the property with the intent of retiring on it in a few years. Nearly all the land was damaged or destroyed.

18. Mary Lou Hermes lives in Sanders County. She owns approximately 190 acres of forested land that was damaged or destroyed by the fire. In addition, she owned a historical dairy barn built in the 1930s that was destroyed by the fire. The barn housed various farm equipment and personal property that was likewise destroyed.

19. Cherlyn Jones lives in Sanders County. She owns approximately 40 acres of forested land that was damaged or destroyed by the fire. She also lost a structure which contained tools and equipment.

20. Marion Lund lives in Sanders County. She owns approximately 137 acres of forested land. The fire damaged or destroyed timber and other vegetation.

21. Paul and Kimberly Necessary live in New York. They own approximately 19 acres of forested land that was damaged or destroyed by the fire. The main dwelling on their property did not burn, but other structures, personal property, timber, and other vegetation were damaged or destroyed.

22. Mark and Heidi Rickner live in Sanders County. They own approximately 40 acres of forested land that was damaged or destroyed by the fire. They lost a home, other structures, personal property, and timber.

23. Laura Schultze lives in Illinois. She owns approximately 40 acres of forested land that was damaged or destroyed by the fire. She lost a dwelling, a structure, personal property, timber, and other vegetation due to the fire.

24. Montana Rail Link (MRL) is a domestic profit corporation with its principal office located in Missoula, Montana.

25. BNSF Railway Co. (BNSF) is a foreign profit corporation formed in Delaware and doing business throughout Montana.

### III.   JURISDICTION & VENUE

26. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

27. Venue is proper in this Court.

## IV.   GENERAL ALLEGATIONS

28. On August 18, 2023, a fire ignited on private property located on River Road East outside of Paradise, Sanders County, Montana.

29. The fire became known as the River Road East Fire.

30. Railway tracks run adjacent to the private property referenced in paragraph 28 (the railway tracks).

31. Upon information and belief, at all times relevant herein, MRL leased and was responsible for the maintenance of the railway tracks.

32. Upon information and belief, MRL and BNSF operate trains on the railway tracks.

33. Upon information and belief, a train passed upon the railway tracks shortly before the fire started.

34. MRL and BNSF are in exclusive control of information regarding railway activities on the railway tracks on August 18, 2023. Plaintiffs believe that discovery in this case will reveal such information.

35. Plaintiffs have retained an expert in fire origin and cause investigations.

36. On October 3, 2023, Plaintiffs' expert met with a witness in Paradise.

37. According to the witness, she was traveling in her vehicle on River Road East sometime after 1:00 P.M. on August 18, 2023, when she observed the fire.

38. The witness showed Plaintiffs' expert the site where she observed the fire. According to the witness, the fire was burning in just one tree located within a couple dozen feet of the railway tracks and depicted in the following photograph:



39. According to the witness, a railway crew of several men employed by MRL or BNSF were standing near the fire and recording it with their cell phones. The men did not appear to have fire suppression equipment with them and were not attempting to extinguish the fire.

40. According to the witness, a utility or service pickup truck owned by MRL or BNSF was on the railway tracks.

41. According to the witness, no first responders from local, state, or federal government had yet arrived at the fire.

42. Given the information available to date, it is the preliminary opinion of Plaintiffs' expert that the fire was more likely than not caused by railway activities.

43. The fire spread rapidly, engulfing around 17,310 acres of timber, homes, structures, and other property.

44. Preliminary reporting from the Sanders County Sheriff's Office indicated that 13-15 residences and at least 55 additional structures were destroyed by the fire.

45. Upon information and belief, more than 50 private property owners may have suffered damage or destruction of their real or personal property because of the fire.

## V. NEGLIGENCE

46. MRL owed Plaintiffs and others similarly situated a duty of ordinary care in maintaining the railway tracks before and on August 18, 2023.

47. MRL and BNSF owed Plaintiffs and others similarly situated a duty of ordinary care in their undertaking of railway activities on the railway tracks on August 18, 2023.

48. The degree of ordinary care owed by MRL and BNSF was that of a reasonable and prudent business skilled in the railway business.

49. The degree of ordinary care owed by MRL and BNSF was proportional to the danger. Therefore, the potential to cause a wildland fire that risked lives and

property required MRL to exercise extraordinary care in maintaining the railway tracks before and on August 18, 2023. Furthermore, the potential to cause a wildland fire that risked lives and property required MRL and BNSF to exercise extraordinary care in their undertaking of railway activities on the railway tracks on August 18, 2023.

50. Negligent maintenance of railway tracks may lead to train wheels slipping and throwing sparks onto adjacent vegetation and trees, thereby causing wildland fires.

51. Negligent maintenance of railway tracks, such as grinding or welding on windy days or without proper safety precautions, may lead to throwing sparks onto adjacent vegetation and trees, thereby causing wildland fires.

52. Negligent maintenance of locomotive exhaust systems may lead to the emission of excessive carbon particles that are blown onto adjacent vegetation and trees, thereby causing wildland fires.

53. Negligent maintenance of train brake systems may lead to throwing sparks onto adjacent vegetation and trees, thereby causing wildland fires.

54. Other negligence by railway companies, although less common, may lead to sparks being blown or thrown onto adjacent vegetation and trees, thereby causing wildland fires.

55. Because track maintenance and/or railway activities more likely than not caused the fire, and because MRL or BNSF are in exclusive control of information regarding their track maintenance and railway activities, negligence is presumed against MRL and BNSF under Montana law. *Missoula Trust & Savings Bank v. Northern Pac. Ry. Co.*, 76 Mont. 201, 245 P. 949 (1926).

56. As a direct and proximate result of the negligence of either MRL or BNSF or both, Plaintiffs and others similarly situated have suffered, and continue to suffer, damages that include, without limitation, property damage, lost income, and emotional distress.

## VI.   CLASS ACTION

57. Plaintiffs seek certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure of the following class: all property owners who have suffered damage or destruction to real and/or personal property as the result of the River Road East Fire.

58. Upon information and belief, the putative class consists of more than 50 members, thus joinder of individual class members is impracticable.

59. Questions of fact are common to the putative class, including but not limited to what track maintenance occurred on the railway tracks or before August 18, 2023; what railway activities occurred on the railway tracks on August 18, 2023; evidence and testimony as to the origin and cause of the fire; and any evidence that

either MRL or BNSF or both may present in an attempt to rebut the presumption of their negligence.

60. Plaintiffs' negligence claims against Defendants are typical of the claims which the putative class have against Defendants. Plaintiffs and the putative class have suffered the same or similar injuries from the same course of conduct by either MRL or BNSF or both.

61. Plaintiffs will fairly and adequately protect the interests of the putative class. Plaintiffs have no antagonistic or conflicting interests with the putative class. Additionally, Plaintiffs' counsel are capable of representing the interests of the putative class. Plaintiffs' counsel have demonstrated success in prosecuting a class action in federal court, and Plaintiffs' counsel have further experience representing thousands of clients in mass tort litigation. Plaintiffs' counsel have retained an expert in fire origin and cause investigations. This expert is a coauthor of the National Wildfire Coordinating Group's Guide to Wildland Fire Origin and Cause Determination – the go-to guide for federal, state, and international fire investigation agencies. Plaintiffs' counsel have also retained a damages expert who specializes in forest ecology and reforestation. And Plaintiffs' counsel have the resources to retain further liability and damages experts as the need arises.

62. Common issues surrounding the acts and/or omissions of either MRL or BNSF or both predominate over the claims of individual members of the putative

class. Also, the need for individualized findings as to the amount of damages each Plaintiff and each putative class member has suffered does not defeat class certification under Rule 23(b)(3).

63. A class action is superior to making the putative class pursue individual claims against either MRL or BNSF or both. A class action achieves economies of time, effort, and expense. If a putative class member wishes to opt out of the class and pursue their own individual claims, they may do so. But so far, no one has filed a case against either MRL or BNSF or both relating to the fire. The putative class is also manageable. Property boundaries and ownership is public record, thus notice to the putative class should be achievable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following:

64. For certification of the following class: all property owners who have suffered damage or destruction to real and/or personal property as the result of the River Road East Fire.

65. For compensatory damages caused to Plaintiffs and the putative class because of the negligence of either MRL or BNSF or both; and

66. For all further legal or equitable relief as the Court deems just.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial in this matter.

DATED November 10, 2023.

                                        AVA LAW GROUP

                                        */s/ Teague Westrope*
                                        Attorneys for Plaintiffs